### IN THE UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**SANA KHAN, Individually,**

    **Plaintiff,**

                                                   **CASE NO.: 8:20-cv-1524-T-30TGW**

**vs.**
**EMERGENCY MEDICAL ASSOCIATES**
**OF TAMPA BAY, a Florida Corporation,**

    **Defendant.**
_____/

### **AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, SANA KHAN (hereinafter "Plaintiff"), brings this action and complaint for damages and demands a jury trial against Defendant, EMERGENCY MEDICAL ASSOCIATES OF TAMPA BAY, a Florida Corporation (hereinafter referred to as "Emergency Medical Associates" or "Defendant"), and in support thereof, would show the Court the following:

1. Plaintiff, Dr. Khan, a Muslim female formerly pregnant brings this claim for religious, sex, and pregnancy discrimination against her employer, Emergency Medical Associates, who discriminated against, harassed, made her endure a hostile work environment, and constructively terminated her because of her religion, sex, and pregnancy in violation of Florida Civil Rights Act, Chapter 760, Fla. Stat. ("FRCA"), Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. § 2000e et. seq. ("Title VII"). Plaintiff is seeking damages including back pay, front pay, compensatory damages, punitive damages, and her attorneys' fees and costs.

### **JURISDICTION**

2. The Court has original jurisdiction over Plaintiff's Title VII claim pursuant to 28 U.S.C. § 1331 because the claim arises under 41 U.S.C. § 2000e et. seq. The Court has

supplemental jurisdiction over Plaintiff's FRCA claim pursuant to 28 U.S.C. § 1367 as this claim is so related to Plaintiff's Title VII claim and that they form part of the same case or controversy.

## VENUE

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions that give rise to the claim occurred within Hillsborough County, Florida. Defendant conducts substantial and a non-isolated business within Hillsborough County, Florida, Defendant has agents and employees in Hillsborough County, Florida, and Defendant's business is located in Hillsborough County, Florida.

## PARTIES

4. Plaintiff, Dr. Khan, is a resident of the state of Florida and resides in the Hillsborough County, Florida. Plaintiff is a Muslim and a devout follower of the religion of Islam and is a female formerly pregnant. Plaintiff was formerly employed by and worked for Defendant located Hillsborough County, Florida. Plaintiff is protected by FCRA and Title VII because:

   a. she is a female;

   b. she was a Muslim employee;

   c. she was pregnant;

   d. she suffered discrimination and harassment because of her religion, sex, and pregnancy;

   e. she engaged in protected activity, for example, she objected to Defendant's unlawful behavior, discriminatory compensation decisions, and/or adverse employment actions;

   f. Defendant failed to rectify discrimination, hostile work environment, and adverse employment actions; and

   g. Defendant constructively terminated Plaintiff's employment because of her religion, sex, and pregnancy.

5. At all times material hereto and currently, Defendant carried out substantial and not isolated business activities and had employees and agents in Hillsborough County, Florida.

6. Defendant employs more than 15 employees and is at all material times an "employer" as envisioned by Title VII of the Civil Rights Act as well as § 760.02(7), Fla. Stat.

## CONDITIONS PRECEDENT

7. On July 16, 2019, Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination by the Defendant based on race, religion, pregnancy, and retaliation under the FCRA and Title VII.

8. On September 12, 2019, Plaintiff filed amended charges with the EEOC.

9. On December 10, 2019, the EEOC issued Plaintiff a Notice of Dismissal and Right to Sue Letter against the Defendant in this matter. A copy of the Right to Sue Letter is attached as Exhibit "A". Plaintiff filed her initial complaint within 90 days of the EEOC's Right to Sue Letter.

10. Plaintiff files this Complaint within the applicable period of limitations.

11. All conditions precedent to this action have been satisfied and/or waived.

## FACTUAL BACKGROUND

12. Plaintiff was employed by Defendant Emergency Medical Associates.

13. Plaintiff was, at all times material, qualified for her position as an Emergency Room Physician employed by Defendant Emergency Medical Associates.

14. Plaintiff is a Muslim female formerly pregnant and was previously employed by Defendant Emergency Medical Associates.

15. During her employment by Defendant Emergency Medical Associates, Plaintiff was treated differently and worse than non-Muslim, non-female, and non-pregnant female employees.

16. Plaintiff was employed with Defendant from July 2014 to May 2019.

17. Plaintiff was employed with Defendant at the St. Joseph's Main Campus facility in Tampa, Florida.

18. In late 2014, Plaintiff became pregnant and informed Defendant.

19. Defendant, and Defendant's employees began to make insulting comments at the expense of Plaintiff.

20. In February 2015, Plaintiff was transferred to Defendant's South Campus facility in Riverview, Florida.

21. Plaintiff expressed her interest to Defendant's CEO, Dr. Bill McConnell, to be transferred back to Defendant's main campus, after which Defendant's CEO informed the Plaintiff that she would be transferred if a position is available.

22. When a position was available at Defendant's main campus, the position was given to a male physician. When Plaintiff inquired about it with the Defendant's CEO, CEO claimed that it was a misunderstanding, and that Plaintiff will receive the next position available at the Defendant's Main Campus.

23. In May of 2015, Plaintiff informed Defendant's CEO, Dr. McConnel about making preparations that could be made for the schedule when Plaintiff is on maternity leave.

24. Defendant's CEO informed Plaintiff in July of 2015 while Plaintiff was in the late stage of her pregnancy, that she would not receive any of her shares because the Defendant was concerned that Plaintiff would become a stay at home mom.

25. In October 2015, Plaintiff was transferred to Defendant's main campus, and had productivity and only three patient complaints during five years with the Defendant.

26. Defendant, and Defendant's employee Dr. Andrew Alexander informed Plaintiff in December of 2015 that "You [Plaintiff] need to get your tubes tied if you want your shares."

27. Defendant, and Defendant's employee Dr. Carlos Smith informed Plaintiff in July of 2016 that "this is why we [Defendant] don't hire anyone with a uterus here."

28. However, Plaintiff already had two children and had worked full time since Plaintiff completed her residency.

29. When Plaintiff expressed that she did not think the determination was fair, the Defendant's CEO informed Plaintiff that there was nothing the CEO could do about it.

30. Defendant's CEO has also informed Plaintiff that she would not receive her shares because the Defendant was not happy that she volunteered at the Red Crescent Clinic, a volunteer clinic that provides free medical services to anyone who is in need. The Red Crescent Clinic is at the Islamic Society of Tampa Bay Area.

31. In December of 2016, Plaintiff was informed that her shares were also being withheld because she was leaving her shift early. In reality, Plaintiff worked 127 hours of the required 120 hours and despite the fact no male counter-parts had their shares withheld for being short of hours.

32. Plaintiff was only one of two female physicians out of eighteen plus physicians at Defendant's main campus.

33. Plaintiff has been receiving discriminatory remarks since Plaintiff became and was pregnant, and Plaintiff's shares have been withheld without a specific reason or explanation.

34. In August of 2016, Defendant deducted Plaintiff's monthly pay for three months because Plaintiff was short a mere two administrative hours.

35. When Plaintiff asked a male physician, who was short on multiple administrative hours if he ever received such a penalty, the male physician laughed and said he had only received a "slap on the wrist."

36. In March of 2018, Defendant's employee Dr. Ian Leber informed Plaintiff that Plaintiff's patient satisfaction scores were up to 99% and that he was extremely happy with Plaintiff's improvement since their meeting in December of 2017. During this meeting Dr. Leber informed Plaintiff that she was going to receive her shares.

37. In May of 2018, Plaintiff inquired with Dr. Leber why was Plaintiff being denied her shares because Plaintiff has met her achievements and improved in all areas requested. Dr. Leber informed Plaintiff that she was being denied her shares due to one complaint. However, male counter-parts who receive complaints, still receive their shares.

38. Plaintiff was denied her share distribution for another six months for no objective reason in June of 2018. Plaintiff received an email from Defendant's employee Dr. Pidala stating that the shares were denied because of "perception."

39. In November of 2018, Plaintiff was denied her shares again for no objective reason.

40. A nurse practitioner, Trish McCreight, told Defendant's employee Dr. Jacob Kahl, a board member, that it was wrong that Plaintiff "was being denied her shares for no reason" and that the Defendant and Defendant's employees treated Plaintiff differently because Plaintiff was a woman, and that "she had a great case for discrimination." Dr. Kahl, replied that "no one cares about that."

41. During some time between November 2018 and January 2019, Defendant's employee Dr. Leber informed Plaintiff that "everything looked good [for Plaintiff]" and that Plaintiff will be receiving her shares in February.

42. In January of 2019, Defendant's employee Dr. Howell, a board member was actively messaging Defendant's employee Dr. Krysta Babyak while Plaintiff was meeting with the Defendant's Board of Directors to determine why Plaintiff was being denied her shares. Dr.

Howell texted Dr. Babyak to inquire if Plaintiff "was dumping patients on her a few nights prior," to which Dr. Babyak replied that Plaintiff "didn't."

43. During this same meeting with Plaintiff and Defendant's Board of Directors, Plaintiff was wrongly informed that there was one complaint filed against Plaintiff at the Defendant's South Campus for leaving early. Plaintiff called the individual who allegedly complained about the Plaintiff, Dr. Closser, who informed Plaintiff that he [Dr. Closser] did not file a complaint.

44. Dr. Closser informed Plaintiff "I'll be done here in a few days and don't care to file complaints about anyone, but he [Defendant's employee Dr. Robelli] harassed a complaint out of me."

45. At this time, Plaintiff was the only doctor denied her shares.

46. In February of 2019, Defendant's employee Dr. Castelluci, a board member, stated that he didn't understand what Plaintiff did wrong because "we all leave our shifts early and stop seeing patients two hours before our shifts end so what did Sana [Plaintiff] do wrong?"

47. In March of 2019, Defendant's employee Dr. Brian Batt stated the "ER is no place for female physicians. They should be at home taking care of their kids." while in the doctors lounge for other doctors to hear.

48. At least three Physician Assistants, Dr. Trish McCreight, Dr. Walter Spence, and Dr. Heather Moody informed Plaintiff that Dr. Howell would approach them to ask if Plaintiff "was a bad physician and dumping patients" on Dr. McCreight, or Dr. Spence, or Dr. Moody.

49. Plaintiff spoke to Defendant's employee, Dr. Dean Goldberg, about Defendant forcing the Plaintiff to resign, and Dr. Goldberg informed the Plaintiff that she is "an amazing physician and you [Plaintiff] could use him as a reference," Dr. Goldberg further stated that there are "only two women at Defendant's main campus." Dr. Goldberg informed Plaintiff that "they

were doing this to you [Plaintiff] because you [Plaintiff] are a woman," and that the facility is a "boy's club."

50. When Plaintiff tried to meet with the board prior to the next share distribution on February 6, 2019, Plaintiff was informed that she would not receive her shares and that Plaintiff would need to resign or be terminated.

51. When Plaintiff asked for an explanation, Plaintiff was informed by the Defendant's CEO, "You [Plaintiff] are not a good fit, we just don't want you in our group."

52. Plaintiff was the only physician asked to sign the general release form which would prevent Plaintiff from suing her employer for discrimination within three weeks. The form also stated Plaintiff will receive a lump sum payment for Plaintiff's shares that Plaintiff bought from Defendant. But, if the Plaintiff did not sign the form, Defendant would repay Plaintiff's twenty shares in a ten-year period. The Defendant's employee, Dr. Leber later informed Plaintiff, if Plaintiff signed the general release form, Plaintiff would be offered a part-time position.

53. Other physicians, one male and one female, who had left the company had never even heard of the form.

54. After Plaintiff's constructive termination/resignation with Defendant, Plaintiff learned that a nurse practitioner, Emily Friedman, had also threatened to sue Defendant because she was discriminated against.

55. Defendant offered Emily Friedman, a severance package and a general release so that she did not sue, which she accepted.

56. Plaintiff has also learned that in regards to part-time positions, part-time male physicians are paid on average thirty to forty dollars per hour more than female physicians.

57. Plaintiff has experienced loss of employment, emotional pain, suffering, and humiliation as a result of Defendant's employment discrimination.

58. Defendant, through the actions more specifically alleged above, affected Plaintiff in a "term, condition or privilege" of her employment as envisioned by § 703 of Title VII, 42 U.S.C. § 2000e-2 and § 760.10(a), Fla. Stat.

59. Defendant's conduct was intentional, reckless, extreme, and outrageous, and far exceeded the bounds of society's expectations of decency.

60. The treatment to which Defendant subjected Plaintiff to was based on her:

   a. being a female; and/or

   b. being Muslim; and/or

   c. being formerly pregnant; and

   d. she suffered discrimination and harassment because of her religion, sex, and her pregnancy; and/or

   e. engaging in protected activity, particularly, complaining to her supervisors

about the harassment and discrimination that she endured in the workplace based on her religion, sex, and pregnancy.

61. Upon information and belief, Defendant and its agents have engaged in a pattern and practice of harassing Muslim employees, non-pregnant female employees, and pregnant female employees under the pretense that Muslim employees, non-pregnant females, and pregnant females will not report the harassment and discrimination for fear of adverse consequences.

### COUNT I: AGAINST DEFENDANT FOR DISCRIMINATION UNDER TITLE VII

62. Plaintiff re-alleges and adopts the allegations contained in paragraphs 1-61 as if fully set forth in this Count.

63. Plaintiff is a member of a protected class because she is a female, formerly pregnant, and a Muslim.

64. Defendant had actual knowledge that Plaintiff was a member of a protected class as Plaintiff gave Defendant notice of her pregnancy in an effort to have Defendant prepare for her maternity leave and Plaintiff regularly volunteered at a Muslim health clinic as a way to give back to her community and honor the tenants of her religion.

65. Defendant discriminated against Plaintiff by withholding her share distributions and constructively terminating her employment because she was female, formerly pregnant, and volunteered at a Muslim health clinic.

66. Defendant's allegations that objective measures and/or perception were the actual reasons for withholding share distributions and constructive termination were merely pretext for the discriminatory acts of Defendant as Plaintiff met all objective measures for share distributions and continued employment.

67. Defendant's allegations that Plaintiff incurred patient complaints and volunteered at a Muslim health clinic were also mere pretext for withholding share distributions and constructive termination as Plaintiff's male counterparts of Christian/Judeo faiths incurred many more patient complaints than Plaintiff and volunteered at Christian/Judeo or unaffiliated health clinics, yet were still granted their share distributions and enjoyed continued employment.

68. The acts of the Defendant, by and through its agents and employees, violated Plaintiff's rights against religion, sex, and pregnancy discrimination under Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. § 2000e et seq.

69. The discrimination to which Plaintiff was subjected to was based on her religion, sex, and pregnancy.

70. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary

losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

71. The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant, to deter them, and others, from such conduct in the future.

72. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. §2000e-5(k).

73. Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

## **REQUEST FOR RELIEF AS TO COUNT I**

**WHEREFORE**, Plaintiff prays that this Court will:

A. Issue a declaratory judgment that the discrimination against Plaintiff by Defendant was in violation of Plaintiff's rights under Title VII;

B. Enjoin Defendant and its agents from continuing to violate Plaintiff's rights under Title VII, and requiring that Defendant make Plaintiff whole for her losses suffered as a result of the discrimination through reinstatement, or, if that is not practical, through an award of back pay and front pay;

C. Grant Plaintiff a judgment against Defendant for damages, including punitive damages;

D. Award Plaintiff her reasonable attorneys' fees and litigation expenses against Defendant pursuant to 42 U.S.C. § 2000e-5(k); and

E. Provide any additional relief that this Court deems just.

## COUNT II: AGAINST DEFENDANT FOR HARASSMENT UNDER TITLE VII

74. Plaintiff re-alleges and adopts the allegations contained in paragraphs 1-61 as if fully set forth in this Count.

75. Plaintiff is a member of a protected class because she is a female, formerly pregnant, and a Muslim.

76. Defendant's agents and employees made offensive comments regarding Plaintiff's sex, pregnancy, and religion as reasons for withholding Plaintiff's share distributions and Plaintiff's constructive discharge.

77. Plaintiff did not welcome and objected to Defendant's harassment on the basis of her sex, pregnancy, and religion when Plaintiff complained that withholding of her share distributions and constructive discharge were because she was a female, formerly pregnant, and a Muslim and that her male counterparts of varying faiths did not endure the harm she endured.

78. As a result of Defendant's harassment on the basis of Plaintiff's sex, pregnancy, and religion, Defendant withheld Plaintiff's share distributions and constructively terminated Plaintiff's employment.

79. The acts of the Defendant, by and through its agents and employees, violated Plaintiff's rights against religion, sex, and pregnancy harassment under Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. § 2000e et seq.

80. The harassment to which Plaintiff was subjected to was based on her religion, sex, and pregnancy.

81. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

82. The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant, to deter them, and others, from such conduct in the future.

83. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. §2000e-5(k).

84. Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

### REQUEST FOR RELIEF AS TO COUNT II

**WHEREFORE**, Plaintiff prays that this Court will:

A. Issue a declaratory judgment that the discrimination against Plaintiff by Defendant was in violation of Plaintiff's rights under Title VII;

B. Enjoin Defendant and its agents from continuing to violate Plaintiff's rights under Title VII, and requiring that Defendant make Plaintiff whole for her losses suffered as a result of the discrimination through reinstatement, or, if that is not practical, through an award of back pay and front pay;

C. Grant Plaintiff a judgment against Defendant for damages, including punitive damages;

D. Award Plaintiff her reasonable attorneys' fees and litigation expenses against Defendant pursuant to 42 U.S.C. § 2000e-5(k); and

E. Provide any additional relief that this Court deems just.

### COUNT III: AGAINST DEFENDANT FOR DISCRIMINATION UNDER THE FLORIDA CIVIL RIGHTS ACT

85. Plaintiff re-alleges and adopts the allegations contained in paragraphs 1-61 as if fully set forth in this Count.

86. Plaintiff is a member of a protected class because she is a female, formerly pregnant, and a Muslim.

87. Defendant had actual knowledge that Plaintiff was a member of a protected class as Plaintiff gave Defendant notice of her pregnancy in an effort to have Defendant prepare for her maternity leave and Plaintiff regularly volunteered at a Muslim health clinic as a way to give back to her community and honor the tenants of her religion.

88. Defendant discriminated against Plaintiff by withholding her share distributions and constructively terminating her employment because she was female, formerly pregnant, and volunteered at a Muslim health clinic.

89. Defendant's allegations that objective measures and/or perception were the actual reasons for withholding share distributions and constructive termination were merely pretext for the discriminatory acts of Defendant as Plaintiff met all objective measures for share distributions and continued employment.

90. Defendant's allegations that Plaintiff incurred patient complaints and volunteered at a Muslim health clinic were also mere pretext for withholding share distributions and constructive termination as Plaintiff's male counterparts of Christian/Judeo faiths incurred many more patient complaints than Plaintiff and volunteered at Christian/Judeo or unaffiliated health clinics, yet were still granted their share distributions and enjoyed continued employment.

91. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against religion, sex, and pregnancy discrimination under the Florida Civil Rights Act, Chapter 760, Fla. Stat.

92. The discrimination to which Plaintiff was subjected to was based on her religion, sex, and pregnancy.

93. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

94. The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant, to deter them, and others, from such conduct in the future.

95. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 760.11(5), Fla. Stat.

96. Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

## **REQUEST FOR RELIEF AS TO COUNT III**

**WHEREFORE**, Plaintiff prays that this Court will:

A. Issue a declaratory judgment that the discrimination against Plaintiff by Defendant was a violation of Plaintiff's rights under the FCRA;

B. Enjoin Defendant and its agents from continuing to violate Plaintiff's rights under the FCRA, and requiring that Defendant make Plaintiff whole for her losses suffered as a result of the discrimination through reinstatement, or, if that is not practical, through an award of back pay and front pay;

C. Grant Plaintiff a judgment against Defendant for damages, including punitive damages;

D. Award Plaintiff her reasonable attorneys' fees and litigation expenses against Defendant pursuant to 760.11(5), Fla. Stat.; and

E. Provide any additional relief that this Court deems just.

## COUNT IV: AGAINST DEFENDANT FOR HARASSMENT UNDER THE FLORIDA CIVIL RIGHTS ACT

97. Plaintiff re-alleges and adopts the allegations contained in paragraphs 1-61 as if fully set forth in this Count.

98. Plaintiff is a member of a protected class because she is a female, formerly pregnant, and a Muslim.

99. Defendant's agents and employees made offensive comments regarding Plaintiff's sex, pregnancy, and religion as reasons for withholding Plaintiff's share distributions and Plaintiff's constructive discharge.

100. Plaintiff did not welcome and objected to Defendant's harassment on the basis of her sex, pregnancy, and religion when Plaintiff complained that withholding of her share distributions and constructive discharge were because she was a female, formerly pregnant, and a Muslim and that her male counterparts of Christian/Judeo faiths did not endure the harm she endured.

101. As a result of Defendant's harassment on the basis of Plaintiff's sex, pregnancy, and religion, Defendant withheld Plaintiff's share distributions and constructively terminated Plaintiff's employment.

102. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against religion, sex, and pregnancy harassment under the Florida Civil Rights Act, Chapter 760, Fla. Stat.

103. The harassment to which Plaintiff was subjected to was based on her religion, sex, and pregnancy.

104. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

105. The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant, to deter them, and others, from such conduct in the future.

106. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 760.11(5), Fla. Stat.

107. Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

## **REQUEST FOR RELIEF AS TO COUNT IV**

**WHEREFORE**, Plaintiff prays that this Court will:

A. Issue a declaratory judgment that the discrimination against Plaintiff by Defendant was a violation of Plaintiff's rights under the FCRA;

B. Enjoin Defendant and its agents from continuing to violate Plaintiff's rights under the FCRA, and requiring that Defendant make Plaintiff whole for her losses suffered as a result of the discrimination through reinstatement, or, if that is not practical, through an award of back pay and front pay;

C. Grant Plaintiff a judgment against Defendant for damages, including punitive damages;

D. Award Plaintiff her reasonable attorneys' fees and litigation expenses against Defendant pursuant to 760.11(5), Fla. Stat.; and

E. Provide any additional relief that this Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for any and all triable issues regarding this case.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to Deborah La Fleur, Esq., via with the Clerk of the Court by using the CM/ECF to the following emails:

Deborah.LaFleur@gray-robinson.com, Craig.Novick@gray-robinson.com,

Roseann.Foster@gray-robinson.com, and Chantal.McCoy@gray-robinson.com on July 31, 2020.

Respectfully submitted,

/s/ Taj Murphy
Taj Murphy
Florida Bar No. 1000554
Email: tmurphy@cair.com
Thania Diaz Clevenger
Florida Bar No. 97301
Email: tclevenger@cair.com
CAIR Florida
8076 N 56th St.
Tampa, Florida 33617
Telephone: (813) 514-1414
Facsimile: (954) 272-0491
*Attorneys for Plaintiff*